**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edward J. SPIRO, Defendant-Appellant.**

**No. 15876.**

United States Court of Appeals Seventh Circuit.

Oct. 23, 1967.

Rehearing Denied Nov. 22, 1967.

Stanley A. Bass, Chicago, Ill., Edward K. Blodnick, Hicksville, N. Y., for appellant.

Edward V. Hanrahan, U. S. Atty., George E. Faber, Chicago, Ill., for appellee, John Peter Lulinski, Gerald M. Werksman, Asst. U. S. Attys., of counsel.

Before HASTINGS, Chief Judge, MAJOR, Senior Circuit Judge, and KNOCH, Circuit Judge.

MAJOR, Senior Circuit Judge.

Defendant (appellant) was charged by indictment in the Northern District of Illinois with the offense of devising and

intending to devise a scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises, and transmitting and causing to be transmitted in interstate commerce, by telephone communications, sounds for the purpose of executing the said scheme and artifice, in violation of Title 18 U.S.C.A. Sec. 1343.

Defendant waived trial by jury and was tried by the court, which found him guilty. From the judgment entered thereon, defendant appeals.

While other contentions are advanced as reasons for reversal, we think the serious contention is that venue was improperly laid in the Northern District of Illinois and that the court, therefore, was without jurisdiction.

A brief statement of the facts will suffice, particularly as they relate to the jurisdictional issue. Defendant was registered at the Mansion Inn in Sacramento, California, from July 3 through July 8, 1965, giving his business address as Silmica Corp., Chicago, Illinois. On the morning of July 8, he placed a person-to-person call from Sacramento to the office of Raymond Rosen, president of Universe Chemicals, Inc., in Chicago. The operator advised that Rosen was out of town and defendant left a message requesting that Rosen call him.

On the same date Rosen, who was in New York City, called his Chicago office and was told of defendant's request. He called defendant in Sacramento and, after a lengthy conversation, agreed to hire him as a salesman for Universe Chemicals, Inc. He further agreed, as requested by defendant, to send him a presentation sales kit and $200 as a draw against future commissions. The money and the kit were sent to defendant in Sacramento. On July 9, defendant accepted delivery of the Universe sales kit at the Railway Express office in Sacramento, and also received and retained the proceeds from a $200 Western Union money order sent by Rosen. Almost immediately after accepting delivery of the sales kit, defendant ordered it reshipped to Silmica Corp. in Chicago (a competitor of Universe Chemicals, Inc.), with whom defendant had been previously and was subsequently employed.

The Railway Express agent in Sacramento, whose testimony defendant characterizes as crucial, testified:

"A. Well, he came in and he said he had a briefcase there, and he wanted to reship it. And I told him that he would have to accept it first, sign for it, and then he could do whatever he wanted with it. That's one of our rules, which he did.

Q. All right. Now, what happened after he accepted it?

A. Well, he said if I would do him a favor and not to say where it was going or if he had been there.

\* \* \* \* \* \*

Q. All right. Now, will you relate the conversation, please, after he accepted it.

A. Well, that was all that was said.

Q. And that was what?

A. That not to say anything, that he had been there or where the briefcase was going.

Q. And was the briefcase ever taken from your presence?

A. No.

Q. In other words, it was shipped out directly as of that time?

A. He accepted it and then reshipped it.

Q. And approximately how much time did this person spend in your presence?

A. Five minutes at the most."

That there was a scheme to defraud, conceived and executed by defendant who reaped the benefit therefrom, is hardly open to question. Defendant on brief states, "\* \* \* defendant might well be liable for unlawful conduct at the time he reshipped the kit, perhaps mail fraud. But the central issue in this wire fraud prosecution is whether an unlawful intention to defraud was

formed at the time of the overt act, the telephone call."

Defendant concedes that venue could have been properly laid in either Northern California or Southern New York, on the premise that it was the telephone call from Rosen in New York to him in California which resulted in sounds being transmitted between two points. This reasoning ignores the call from defendant in Sacramento to Rosen in Chicago, which is characterized as an "abortive" or incomplete call.

Defendant cites only Boruff v. United States, 5 Cir., 310 F.2d 918, in support of his venue contention. In that case there were two telegraphic transmissions, the first interstate, from Charlotte, Michigan, to Atlanta, Georgia, and the second intrastate, from Atlanta to Thomasville, Georgia. The court held that the first was complete upon its receipt at Atlanta and that the second was not in interstate commerce and for this reason venue was improperly laid in the district in which Thomasville was located, a different district from that of Atlanta. The case is of no benefit to defendant here.

The government relative to the venue issue relies upon Title 18 U.S.C.A. Sec. 3237(a), which in part states:

"* * * any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

■ We agree with the government that a continuing offense was charged, which had its inception in the first call made by defendant to Rosen in Chicago. Of course, that call isolated and standing alone was of no consequence, but when considered in connection with its purpose and with the results which it obtained, it takes on a different hue. As the government points out, that call set off a chain of events which culminated in the cashing by defendant of the $200 money order and his reshipping of the sales kit to Rosen's competitor. Defend-

ant and Rosen were strangers, and without the first call there would have been no second. The call to Chicago was the motivating factor which enabled defendant to perpetrate the fraud on Rosen. We hold that venue was properly laid. See United States v. Floyd, 228 F.2d 913, 917 (CA-7).

■ Defendant's second contention is that the trial judge misunderstood the testimony of a government witness and erred in crediting the testimony of certain other government witnesses. Counsel seems to overlook that it was the function of the trial judge to weigh the testimony and determine the credibility of the witnesses. Defendant's contention in this respect is without merit.

■ Lastly, defendant contends that the court committed prejudicial error in admitting testimony of an FBI agent as to an interview with defendant after his arrest. The testimony complained of was in the nature of impeaching evidence after the ground therefor had been laid on cross-examination of defendant. When the witness was called, an objection was made solely on the basis that defendant had not been furnished with the report made by the agent. On direction of the court, this report was furnished defendant, and the agent subsequently testified without further objection. The attention of the court was not called to any of the reasons assigned here as to why the testimony should have been excluded. Thus, the issue is not properly here for review. United States v. Vasen, 222 F.2d 3, 5 (CA-7).

The court in its summary of reasons for finding defendant guilty did not mention the testimony complained of. Evidently it considered it of no importance. In a similar situation, in United States v. Oliver, 7 Cir., 363 F.2d 15, 19, this court stated:

"* * * it is clear that the trial court did not consider the evidence relevant or significant to the crimes charged in the indictment. In the face of such statements, we do not find that evidence brought in to challenge Oli-

ver's credibility had any significant effect on the trial court's considerations."

This court has also held that in a case tried without a jury, as here, it must be assumed that the court considered only the evidence properly admitted. United States v. David, 7 Cir., 107 F.2d 519, 522.

We hold that no prejudicial error has been shown. The judgment appealed from is

Affirmed.